1999 ME 47

Crocker NEVIN [1] et al.

v.

UNION TRUST COMPANY

and

Hale & Hamlin et al.

Supreme Judicial Court of Maine.

Argued Dec. 1, 1998.
Decided March 12, 1999.

---

1. The actual plaintiffs are Crocker Nevin both individually as a beneficiary of the estate and in his capacity as personal representative of the Estate of Jennie Fassett Learned, and Annie Chamberlain, Jane N. Guinness and Ethelbert Nevin II, individually as beneficiaries of the estate.

Julian L. Sweet (orally), Paul F. Macri, Berman & Simmons, P.A., Lewiston, attorneys for plaintiffs.

James R. Wholly (orally), George Z. Singal, Gross, Minsky, Mogul & Singal, P.A., Bangor, for Union Trust Company.

Kevin J. Beal (orally), Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, for Hale & Hamlin.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1]  This matter is before the Court on report by the Superior Court (Hancock County, *Mead, J.*) pursuant to M.R.Civ.P. 72(c) to consider whether plaintiffs' claims of negligence, breach of contract and breach of fiduciary duty are time barred.

[¶ 2]  In its rulings on the defendants' motions for a summary judgment, the court determined that:

1.  The individual beneficiaries of the estate lacked standing to assert claims against the estate planning law firm; and

2.  Claims against all defendants were largely barred by the statutes of limitation, 14 M.R.S.A. §§ 752, 753–A (1980 & Supp. 1998), as accruing more than six years prior to February 1, 1995.

[¶ 3]  Because there were some issues regarding events occurring after February 1, 1989, the summary judgment did not finally resolve all claims.  Accordingly the parties, by agreement, reported the issues to this Court, pursuant to M.R.Civ.P 72(c).  As part of the report, the parties stipulated that a ruling by this Court that the plaintiffs' claims arising from acts occurring or alleged to have occurred before February 1, 1989, are barred by the applicable statutes of limitation "will completely and finally dispose of plaintiffs' claims and of any claims of the beneficiaries of the Estate of Jennie Learned, whether occurring or alleged to have occurred before or after February 1, 1989.... " With this stipulation, plaintiffs abandoned claims for any events occurring after February 1, 1989, and assured that consideration of the report on the merits was appropriate.[2]

[¶ 4]  Because we determine that plaintiffs' claims against Union Trust Company (Union Trust) are not time barred, we vacate the summary judgment order regarding Union Trust.  We affirm the judgment regarding the law firm and the individual attorneys.

[¶ 5]  We review the grant of a summary judgment for errors of law, viewing all the properly presented evidentiary materials in a light most favorable to the party against whom the summary judgment·was entered.  *Denman v. Peoples Heritage Bank, Inc.*, 1998 ME 12, ¶ 3, 704 A.2d 411, 413. "We undertake an independent review of the record to determine if there is a genuine issue of material fact and if the moving party was entitled to a judgment as a matter of law."  *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 4, 695 A.2d 1206, 1208.

## Case History

[¶ 6]  The facts as developed for purposes of the summary judgment may be summarized as follows:

[¶ 7]  At some time in 1976, Jennie Fassett Learned contracted with Union Trust to provide her with custodial account services.

---

2.  This Court may consider a report: "provided that the decision thereof would in at least one alternative finally dispose of the action." M.R.Civ.P. 72(a).

After 1985, the principal assets subject to Union Trust management were two valuable properties in Blue Hill. In 1985, William Clark, a Union Trust officer, recommended that Learned form a corporation to hold her Blue Hill real estate. The recommended purpose for forming the corporation was to reduce potential estate taxes by transferring real estate to the corporation and then making annual gifts of stock to Learned's four children.

[¶ 8] In furtherance of that proposal, Clark introduced Learned to Atherton Fuller, an attorney with the law firm of Hale & Hamlin. After Learned met Fuller, she retained him and his firm to prepare a will, draft a durable power of attorney and form a corporation named the Nevin Corporation (Corporation).

[¶ 9] The Corporation was organized with Learned, the sole shareholder, receiving two thousand shares of stock in exchange for her Blue Hill real estate. The durable power of attorney assigned to another Union Trust officer, Robert Boit, all authority to manage Learned's business, corporate and financial affairs—including the preparation and filing of tax returns. The will that Fuller drafted included a provision devising all Learned's stock in the Corporation remaining upon her death to her children. The articles of incorporation of Nevin Corporation provided that transfers of stock could only be made between Learned and her children.

[¶ 10] Fuller was designated as clerk of the Corporation and undertook certain ongoing duties in managing the Corporation's legal affairs, including preparing stock certificates and arranging the annual transfers of stock of the Corporation in amounts worth $10,000 to each of Learned's children. In furtherance of this responsibility, gifts of stock intended to have a total value of $40,000 a year were made to the children in each of the years 1985 through 1988. Fuller also performed other duties, including, in 1987, contacting the Town of Blue Hill regarding taxation of the real estate of the Corporation.

[¶ 11] In 1988, another Hale & Hamlin lawyer, Jeffrey Jones, replaced Fuller as clerk of the Corporation and assumed Fuller's duties regarding oversight of the Corporation's legal affairs. Jones recommended to Learned, and Learned agreed to create an irrevocable trust transferring the Nevin Corporation stock that Learned still owned to Union Trust as the trustee. In December 1988, Jones prepared the instruments creating this irrevocable trust. The trust instruments prepared by Jones violated the Corporation's articles of incorporation by transferring shares in the Corporation to an entity other than Learned or her children.

[¶ 12] There were no $10,000 gifts of shares of stock to each of the children in 1989. This was because Jones and Union Trust apparently concluded that before gifts of stock could be made, the real estate would need to be appraised to assure that the value of the gifts was in the individual amounts of $10,000 intended by Learned. The gifts resumed in 1990.[3]

[¶ 13] Learned died on September 16, 1992. Her estate, consisting primarily of the two Blue Hill properties, had a value in excess of $3,000,000.

[¶ 14] In 1994, the Internal Revenue Service (IRS) disallowed the benefits to the estate that were expected to result from the transfer of the real estate to the Corporation and the succeeding transfer of the shares to the trust because corporate formalities had not been observed and the transactions were regarded as a sham. As a result, the IRS assessed additional taxes, interest and penalties of more than $400,000 against the Learned Estate. The exact nature of the plaintiffs' liability and damages claims are not entirely clear in the record and must be addressed on remand.

[¶ 15] The corporate formalities that the IRS determined had not been properly observed included: (i) complying with the articles of incorporation; (ii) obtaining a corporate tax identification number; (iii) filing corporate tax returns; (iv) collecting rent from Learned and her children as they occupied the property; (v) having leases for use of the property; and, (vi) having a bank

---

**3.** The record is unclear regarding the timing of the resumption of the gifts, the above statement is based on representations by counsel at oral argument.

account to collect lease proceeds and pay corporate expenses to maintain the property. Arguably, these are formalities that reasonably competent attorneys and trust departments should have recognized and observed.

[¶ 16] Despite the importance of observing corporate formalities in order to get the planned IRS tax benefits, it is undisputed that none of the defendants ever informed Learned of the necessity of following these corporate formalities. Also, none of the defendants followed these legally required corporate formalities during the term of their representation of Learned and their management of the affairs of the Corporation and the trust between creation of the Corporation in 1985 and the trust in 1988 and Learned's death in 1992. It is also undisputed that Jones drafted documents which explicitly violated the corporate charter by failing to respect the restrictions on transfers indicated in the corporate bylaws and arranging for transfer of the corporate stock to the trust.

[¶ 17] On November 16, 1994, after the IRS action, Jones sent a letter to the personal representative and beneficiaries of the estate advising that they may have a cause of action against Hale & Hamlin for malpractice arising from either the failure to render proper advice about or manage the Corporation in a way which complied with IRS requirements.

[¶ 18] In early 1995, as the possibility of a negligence and legal malpractice action loomed, all the parties to this action entered into an agreement to toll the applicable statutes of limitation "for a period of six months, from February 1, 1995 until August 1, 1995."

[¶ 19] On November 15, 1995, the personal representative and the beneficiaries filed this action against Union Trust, Hale & Hamlin, Fuller and Jones alleging, as to each, negligence, breach of contract and breach of fiduciary duty. The essence of the claim is that the defendants in their management of the Corporation and the trust, failed to observe and respect the corporate formalities required by law to qualify for favorable tax treatment, or to advise Learned to take those actions.

[¶ 20] After the action was joined and some discovery was taken, all defendants moved for a summary judgment. The court granted a partial summary judgment to all defendants.

[¶ 21] Regarding Union Trust, the court granted a summary judgment, determining that the statute of limitations, 14 M.R.S.A. § 752,[4] barred any claim against Union Trust arising out of actions occurring before February 1, 1989.

[¶ 22] Regarding the attorneys, the court concluded that the beneficiaries of the estate lacked standing to maintain an action against the estate planning lawyers of the deceased. As to the personal representative's claims, the court concluded that the statute of limitations, 14 M.R.S.A. § 753–A, barred any claim against the lawyers arising out of acts occurring before February 1, 1989.[5]

[¶ 23] Because the summary judgment orders left the potential for some claims regarding events after February 1, 1989, the orders were not final judgments except for the individual beneficiaries' claims against the attorneys. Accordingly, to facilitate this appeal, the parties, by agreement, and with approval of the court, reported the matter in accordance with the provisions of M.R.Civ.P. 72(c). As part of the report, the parties entered a stipulation, previously discussed, that a ruling by this Court that the plaintiffs' claims arising from acts occurring or alleged to have occurred before February 1, 1989 are barred by the applicable statutes of limitation "will completely and finally dispose of plaintiffs' claims whether occurring or al-

---

4. 14 M.R.S.A. § 752 states:

All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, except actions on a judgment or decree of any court of record of the United States, or of any state or of a justice of the peace in this State, and except as otherwise specially provided.

5. In its original order, the court granted a summary judgment effectively barring claims for acts which occurred prior to November 15, 1989. On plaintiffs' motion, objected to by the defendants, this was amended by the court, recognizing the tolling agreement, to move the bar date back to February 1, 1989.

leged to have occurred before or after February 1, 1989...."

### Claims Against Union Trust Company

■ [¶ 24] The parties agree that the claims against Union Trust are governed by 14 M.R.S.A. § 752. Section 752 provides that civil actions must be commenced "within 6 years after the cause of action accrues," but does not specify when the cause of action accrues. When the Legislature does not give explicit directions, "definition of the time of accrual ... remains a judicial function." *Anderson v. Neal,* 428 A.2d 1189, 1191 (Me. 1981). Generally, we have defined the time of accrual as "the time the plaintiff sustains a judicially cognizable injury." *Chiapetta v. Clark Assocs.,* 521 A.2d 697, 699 (Me.1987).

[¶ 25] In some cases we have held that the cause of action does not accrue until the plaintiff discovers or reasonably should have discovered the cause of action. *See Myrick v. James,* 444 A.2d 987, 996 (Me.1982) (foreign-object surgical malpractice);[6] *Anderson,* 428 A.2d at 1192 (negligent search of title by attorney).[7] In *Anderson,* we held that application of the discovery rule is appropriate only when there exists a fiduciary relationship between the plaintiff and defendant, the plaintiff must rely on the defendant's advice as a fiduciary, and the cause of action was virtually undiscoverable absent an independent investigation that would be destructive of the fiduciary relationship. *See Anderson,* 428 A.2d at 1192.

[¶ 26] In its ruling on the motions for a summary judgment, the trial court appeared to attach particular significance to the 1985 date for execution of the corporate documents and the 1988 date for execution of the trust documents. Further, the trial court apparently determined that there were no ongoing duties associated with management of the Corporation or oversight of the trust that were the responsibility of Union Trust. Thus, in the trial court's view, any acts of negligence, breach of contract or breach of fiduciary duty were complete with the execution of the documents. This is also the position taken by Union Trust on this appeal. This narrow view of the extent of Union Trust's duties is not consistent with the record viewed in a light most favorable to the plaintiffs.

■ [¶ 27] Union Trust held itself out to Learned as an entity to whom management of important financial matters could be entrusted. Specifically, a factfinder could find that Union Trust led Learned to believe that it would assure that the necessary accounting, tax and legal responsibilities would be complied with in a manner consistent with its responsibility to exercise "the care and skill as a person of ordinary prudence would exercise" in the management of the assets. *See* RESTATEMENT (SECOND) OF TRUSTS § 174 (1959). That management responsibility and duty to the beneficiaries of its trusts not to be negligent did not end once the corporate and trust documents were executed. According to the record, Union Trust had a significant role in the ongoing management of Learned's financial affairs from 1976 forward until her death in 1992. In 1985, Union Trust increased its role in Learned's affairs by recommending creation of the Corporation and the transfer of the real estate to the Corporation. It also took a durable power of attorney giving it authority to manage Learned's business, corporate and financial affairs. Union Trust assumed an even greater role in 1988 with the creation of the irrevocable trust and the transfer of the shares of corporate stock to Union Trust for its management.

[¶ 28] By the time of the creation of the trust in 1988, Union Trust had assumed significant and ongoing management responsibilities with respect to the accounting, tax and legal issues regarding management of Learned's assets. Because of the degree of management responsibility it had assumed, it was Union Trust's fiduciary responsibility to

---

6. *Myrick,* which applied the discovery rule to 14 M.R.S.A. § 753, and overruled a prior decision, *Tantish v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962), predated enactment of the comprehensive law governing medical malpractice claims and time limits. *See* 24 M.R.S.A. §§ 2851 et seq.

7. *Anderson* predated enactment of 14 M.R.S.A. § 753–A.

assure that the necessary corporate formalities were followed to qualify the real estate assets of her estate for most favorable tax treatment. Had Union Trust properly fulfilled its responsibilities with regard to management of the corporate affairs, including assurance that corporate formalities were complied with, in the period between creation of the Corporation and the power of attorney to Union Trust in 1985, creation of the trust in 1988, and Jennie Learned's death in 1992, the problems with the IRS may have been avoided. The alleged breaches of duty by Union Trust that serve as the basis for the claims of negligence, breach of contract and breach of fiduciary duty were breaches of ongoing trust responsibility that occurred in significant part during Union Trust's management of Jennie Learned's assets in the period 1985 through the stipulated cut-off of actionable claims, February 1, 1989.

[¶ 29] Union Trust, in holding itself out to the plaintiffs and to the public, as competent to accept fiduciary responsibility and manage significant assets necessarily holds itself out as capable of insuring compliance with the requisite accounting, tax and legal requirements incident to its responsibilities.

[¶ 30] Because Union Trust had assumed a fiduciary responsibility to manage Learned's assets, Learned could not have been expected to discover any negligence in Union Trust's management of her assets. Accordingly, the discovery rule articulated in *Anderson*, 428 A.2d at 1192, applies to accrual of the action against Union Trust. On this record, the action is not time barred as a matter of law.

### Claims Against Attorneys

[¶ 31] In actions against attorneys, the statute of limitations begins to run "from the date of the act or omission giving rise to the injury," except in enumerated cases, when the statute begins to run upon the discovery of the cause of action. *See* 14 M.R.S.A. § 753–A. One such exception is "an action alleging professional negligence in the drafting of a last will and testament." *Id.* § 753–A(B).

[¶ 32] The plaintiffs argue that their claims fall within the statutory discovery rule because their claims assert "negligence in the drafting of a last will."

[¶ 33] We have recognized that statutes of limitation will be narrowly construed. *See Harkness v. Fitzgerald*, 1997 ME 207, ¶ 5, 701 A.2d 370, 372. Thus, we cannot, as the plaintiffs urge, construe the law firm's alleged negligence in its ongoing management and advice concerning the affairs of the Corporation to be negligence in the drafting of Learned's last will and testament. From all that appears, there was no negligence in the drafting of the will itself.

[¶ 34] Plaintiffs also ask us to judicially construct a discovery rule for actions against estate planning lawyers. When the Legislature has given explicit directions as to when a statute of limitations begins to run, we are not "free to re-define the term" by the creation of a discovery rule. *See Musk v. Nelson*, 647 A.2d 1198, 1201 (Me.1994). In addition, when the Legislature provides for enumerated exceptions to its definition, those exceptions "implicitly den[y] the availability of any other." *Id.* at 1202.

[¶ 35] Had the Legislature intended that the will drafting exception to the occurrence rule in section 753–A should apply to negligence in drafting estate planning documents and the management of entities created as part of an estate plan, it could have said so. Accordingly, section 753–A bars application of the discovery rule to the claims against the attorneys.

[¶ 36] The plaintiffs next argue that their claims against the attorneys are saved from the statutes of limitation by the doctrine of continuing representation. The doctrine of continuing representation "tolls the running of the statute in an attorney malpractice action until the professional relationship terminates with respect to the matter underlying the malpractice action." *Smith v. Stacy*, 198 W.Va. 498, 482 S.E.2d 115, 120 (1996).

[¶ 37] For the doctrine to apply, there must be a "clear indicia of an ongoing, continuous, developing, and dependent rela-

tionship between the client and the attorney." *Schoenrock v. Tappe*, 419 N.W.2d 197, 201 (S.D.1988) (quoting *Muller v. Sturman*, 79 A.D.2d 482, 437 N.Y.S.2d 205, 208 (N.Y.App.Div.1981)). Even if we might apply the continuing representation doctrine in the appropriate case, here plaintiffs have stipulated away any such claims by waiving claims regarding any representation in the period after February 1, 1989.

[¶ 38] Application of 14 M.R.S.A. § 753–A bars the personal representative's claim against the attorneys.

### The Beneficiaries' Claims

[¶ 39] The last matter for this Court to address is the beneficiaries' claims against Hale & Hamlin. The trial court determined that the individual beneficiaries lacked standing to make a claim against Hale & Hamlin because they were not clients of Hale & Hamlin and, therefore, lacked privity.

[¶ 40] A number of the jurisdictions that have addressed the issue have determined that individual named beneficiaries of a will have standing to bring professional negligence claims against attorneys representing estates or preparing estate documents. *See, e.g., Simpson v. Calivas*, 139 N.H. 1, 650 A.2d 318, 321 (1994) (citing R. MALLEN & J. SMITH, LEGAL MALPRACTICE § 26.4, at 595 (3d ed. 1989 & Supp.1992)).

[¶ 41] When there is a personal representative to assert the financial claims on behalf of the estate, however, the better rule appears to be not to allow individual beneficiaries to assert claims for negligence. Otherwise, it is possible that a number of individual beneficiaries could assert differing and conflicting malpractice claims, and attorneys, in drafting wills and estate planning documents, could be presented with difficult challenges resolving conflict of interest issues with respect to named beneficiaries at times when they are drafting the documents. *See Barcelo v. Elliott*, 923 S.W.2d 575, 578 (Tex. 1996). In such instances, what is good for one beneficiary may not be good for another beneficiary or for the estate as a whole. A holding that attorneys have some duty, enforceable through a cause of action, to individual beneficiaries of estates, separate from their duty to the estate itself, could significantly add to the difficulty and cost of preparing estate planning documents and obtaining competent counsel to draft documents when there is a significant possibility of conflict among beneficiaries. Accordingly, we conclude that individual beneficiaries do not have standing to sue estate planning attorneys for malpractice when they are not the client who retained the attorney and when the estate is represented by a personal representative who stands in the shoes of the client.

[¶ 42] Therefore, we conclude that:

1. The Superior Court ruled correctly in dismissing the claims by the personal representative and the individual beneficiaries against the law firm defendants.

2. The judgment of the Superior Court must be vacated and remanded for determination of the claims by all the plaintiffs against Union Trust.

The entry is

Judgment vacated in part and affirmed in part. Remanded to the Superior Court for further proceedings consistent with this opinion.