2000 ME 94

**DUNELAWN OWNERS' ASSOCIATION et al.[1]**

v.

**Maurice R. GENDREAU.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 26, 2000.

Decided May 19, 2000.

1. This is an insurance subrogation action, and all plaintiffs are represented by one insurance carrier for this appeal.

Anthony K. Ferguson, Fales & Fales, P.A., Lewiston, for plaintiffs.

Michael J. Donlan, Gene R. Libby, Verrill & Dana, LLP, Kennebunk, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER and CALKINS, JJ.

**ALEXANDER, J.**

[¶ 1] Dunelawn Owners' Association and Janice and Sophia Caffray appeal the judgment of the Superior Court (York County, *Perkins, A.R.J.*) granting Maurice Gendreau's motion for a summary judgment against their claims for damages caused by a fire in building 3, unit 20 of the Dunelawn Condominium in Ogunquit. They argue that the court erroneously disregarded their motion to amend their complaint and erroneously granted summary judgment based on Gendreau's statute of limitations defenses. We affirm.

## I. FACTS

[¶ 2] In the early 1980s, Dunelawn Associates, a general partnership, constructed a multi-unit condominium in Ogunquit. In October 1984, Dunelawn Associates created the Dunelawn Condominium by filing a condominium declaration in the York County Registry of Deeds[2] and created Dunelawn Owners' Association, a nonprofit corporation and one of the plaintiffs in this action.[3] Maurice Gendreau was a general partner of Dunelawn Associates during the development and construction of the condominium and at the date of its declaration.

[¶ 3] On November 1, 1985, Janice and Sophia Caffray purchased unit 20 in building 3 from Dunelawn Associates. In late 1994 or early 1995, the Caffrays began to experience electrical problems in their unit. On February 6, 1995, a fire occurred in building 3, allegedly originating in a metal junction box containing wires associated with the heating system for the Caffrays' unit.[4] Dunelawn Owners' Associa-

2. Pursuant to 33 M.R.S.A. § 1602–101 (1999):

   A condominium may be created ... only by recording a declaration executed in the same manner as a deed, by all persons whose interests in the real estate will be conveyed to unit owners and by every lessor of a lease the expiration or termination of which will terminate the condominium or reduce its size.

3. Pursuant to 33 M.R.S.A. § 1603–101 (1999), the owners of a newly created condominium must organize a nonprofit corporation to serve as a "unit owners' association" before they may convey units to purchasers. Dunelawn Owners' Association attends to the government, operation, and maintenance of the Dunelawn Condominium.

4. In support of their statement of material facts, M.R. Civ. P. 7(b)(2), the Dunelawn Owners' Association and the Caffrays offered the affidavit of Richard A. Fain to support the contention that the fire was caused by, *inter*

tion suffered approximately $174,000.00 in damages to the building and the Caffrays suffered approximately $23,000.00 in damages to personalty contained in unit 20.

[¶ 4] On July 24, 1998, Janice and Sophia Caffray and Dunelawn Owners' Association (collectively referred to as Dunelawn) commenced this action as an insurance subrogation claim against Gendreau. The complaint alleged that Gendreau, through Dunelawn Associates, "caused the construction of Building 3 negligently and carelessly, or by breach of contract, or by breach of other duty, by using insufficient electrical wiring within the building, and/or caused the deficient installation of the electrical wiring." In June 1999, Gendreau filed a motion for summary judgment. As part of their response to Gendreau's motion, Dunelawn filed a motion to amend and an amended complaint, adding the electrical contractors as defendants [5] and listing, with respect to Gendreau, separate counts for breach of the Maine Condominium Act's implied warranties of quality, 33 M.R.S.A. § 1604–113 (1999), breach of the common law warranty of habitability, negligence, and strict liability.

[¶ 5] The court entered a judgment granting Gendreau's motion for summary judgment immediately following a hearing. Dunelawn filed a timely notice of appeal.

## II.   MOTION TO AMEND

[¶ 6] Dunelawn argues that the court abused its discretion by not granting their motion to amend their complaint prior to consideration of Gendreau's motion for summary judgment. The court's ruling on the motion to amend is not evident from the record. Because we conclude that an entry of summary judgment on all counts presented in the amended complaint would have been proper, we assume for purposes of this appeal that the court granted the motion to amend.[6]

## III.   MAINE CONDOMINIUM ACT WARRANTY CLAIMS

[¶ 7] The Maine Condominium Act provides that one selling a condominium unit makes certain implied warranties of quality to the purchaser. *See* 33 M.R.S.A. § 1604–113 (1999).[7]  The Act also provides

---

*alia,* use of a metal junction box that was too small for the amount of wiring contained in it, inadequate grounding of the junction box, and inadequately-sized electrical cable, all in violation of the National Electrical Code.

5.  The electrical contractors apparently were never formally joined into the action in Superior Court and are not involved in this appeal.

6.  Because of the uncertainty generated by the lack of any court ruling on this motion in the record, we stress once again that a court should explicitly rule on a pending motion to amend a complaint prior to ruling on a pending motion for summary judgment. *See Kelly v. Michaud's Ins. Agency, Inc.,* 651 A.2d 345, 346 (Me.1994); *Glynn v. City of South Portland,* 640 A.2d 1065, 1067 (Me.1994).

7.  Title 33 M.R.S.A. § 1604–113 provides:

§ **1604–113.  Implied warranties of quality**
(a) A declarant and any person in the business of selling real estate for his own account warrants that a unit will be in at least as good condition at the earlier of the time of the conveyance or delivery of possession

as it was at the time of contracting, reasonable wear and tear excepted.
(b) A declarant and any person in the business of selling real estate for his own account impliedly warrants that a unit and the common elements in the condominium are suitable for the ordinary uses of real estate of its type and that any improvements made or contracted for by him, or made by any person before the creation of the condominium, will be:
(1) Free from defective materials; and
(2) Constructed in accordance with applicable law, according to sound engineering and construction standards and in a workmanlike manner. Construction complying with the National Building Code and Code Administrators (BOCA), Basic Building Code or equivalent applicable local building code, if any, shall be deemed to satisfy such sound engineering or construction standards.
(c) In addition, a declarant warrants to a purchaser from him of a unit that may be used for residential use that an existing use, continuation of which is contemplated by the parties, does not violate applicable law

its own statute of limitations for these warranties. *See id.* § 1604–115.[8] Section 1604–115(b) provides a six-year limitations period that runs from accrual "regardless of the purchaser's lack of knowledge of the breach." In the case of a warranty relating to a condominium unit, the action accrues at "the time the purchaser to whom the warranty is first made enters into possession if a possessory interest was conveyed . . . ." *Id.* § 1604–115(b)(1). In the case of a warranty related to a common element, the action accrues "at the time the common element is completed or, if later . . . at the time the first unit . . . is conveyed to a bona fide purchaser." *Id.* § 1604–115(b)(2).

> at the earlier of the time of conveyance or delivery of possession.
> (d) Warranties imposed by this section may be excluded or modified as specified in section 1604–114.
> (e) For purposes of this section, improvements made or contracted for by an affiliate of a declarant, section 1601–103, paragraph (1), are made or contracted for by the declarant.
> (f) Any conveyance of a unit transfers to the purchaser all of the declarant's implied warranties of quality.

8. Title 33 M.R.S.A. § 1604–115 provides, in pertinent part:

> **§ 1604–115.   Statute of limitations for warranties**
> (a) A judicial proceeding for breach of any obligation arising under section 1604–112 or 1604–113 must be commenced within 6 years after the cause of action accrues, but the parties may agree to reduce the period of limitation to not less than 2 years. With respect to a unit that may be occupied for residential use, an agreement to reduce the period of limitation must be evidenced by a separate instrument executed by the purchaser.
> (b) Subject to subsection (c), a cause of action for breach of warranty of quality, regardless of the purchaser's lack of knowledge of the breach, accrues:
> (1) As to a unit, at the time the purchaser to whom the warranty is first made enters into possession if a possessory interest was conveyed or at the time of acceptance of the instrument of conveyance if a nonpossessory interest was conveyed; and
> (2) As to each common element, at the time the common element is completed or, if later:

[¶ 8] Dunelawn challenges the application of the Act's statute of limitations to the Caffrays's individual claims on the basis that there is "no evidence of when Plaintiffs Janice and Sophia Caffray took possession of Unit 20." The Caffrays' 7(d) statements[9] state that they purchased the unit in November 1985, more than fourteen years ago, and that they "have continuously owned Unit 20 . . . since its purchase" and "never experienced any electrical problems until approximately two months before the fire." Thus, Dunelawn's contention that application of the Act's statute of limitations would be erroneous based on an absence

> (i) As to a common element which may be added to the condominium or portion thereof, at the time the first unit therein is conveyed to a bona fide purchaser; or
> (ii) As to a common element within any other portion of the condominium, at the time the first unit in the condominium is conveyed to a bona fide purchaser.
> (c) If a warranty of quality explicitly extends to future performance or duration of any improvement or component of the condominium, the cause of action accrues at the time the breach is discovered or at the end of the period for which the warranty explicitly extends, whichever is earlier.

9. M.R. Civ. P. 7(d) states as follows:

> **(d) Motions for Summary Judgment.**
> (1) In addition to the material required to be filed by subdivision (b) of this rule, upon any motion for summary judgment there shall be annexed to the motion a separate, short and concise statement of the material facts, supported by appropriate record references, as to which the moving party contends there is no genuine issue to be tried.
> (2) The party opposing a motion for summary judgment shall file with the material required to be filed by subdivision (c) of this rule a separate, short and concise statement of the material facts, supported by appropriate record references, as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party, if supported by appropriate record references, will be deemed to be admitted unless properly controverted by the statement required to be served by the opposing party.

of proof of when the Caffrays took possession of the unit fails. Because the Caffrays were in possession of unit 20 in 1985, their Maine Condominium Act implied warranty claim is barred by that Act's statute of limitations.

[¶ 9] Gendreau argues that all of Dunelawn's claims should be barred by section 1604–115 because Dunelawn should not be permitted to "simply relabel their claims to obfuscate the clear legislative intent to provide a six year statute of limitations." Section 1604–115(a) provides, "[a] judicial proceeding for breach of any obligation arising under section 1604–112 [10] or 1604–113 must be commenced within 6 years after the cause of action accrues." By its own terms, the Maine Condominium Act's statute of limitations applies only to warranties created by the Act. Because the plain language of the statute resolves the issue, we will not attempt to infer a contrary legislative intent. *See Merrill v. Sugarloaf Mountain Corp.*, 2000 ME 16, ¶ 11, 745 A.2d 378, 384.

## IV. COMMON LAW AND STRICT LIABILITY CLAIMS

[¶ 10] Dunelawn next contends that their claims for negligence, strict liability,[11] and breach of the warranty of habitability survive application of the general statute of limitations as well as the Condominium Act's statute of limitations, because they did not accrue until the date of the fire.

[¶ 11] Title 14 M.R.S.A. § 752 (1980) provides, "[a]ll civil actions shall be

....

commenced within 6 years after the cause of action accrues and not afterwards ... except as otherwise specially provided." Generally, a cause of action accrues when a party suffers a judicially cognizable injury. *See Porter v. Philbrick–Gates*, 2000 ME 35, 745 A.2d 996, 998 n. 2. Thus, a contract cause of action accrues at the time of breach. *See Kasu Corp. v. Blake, Hall & Sprague, Inc.*, 582 A.2d 978, 980 (Me. 1990). A tort action accrues when the plaintiff suffers harm to a protected interest. *See Johnston v. Dow & Coulombe, Inc.*, 686 A.2d 1064, 1066 (Me.1996). "When the Legislature does not give explicit directions, 'definition of the time of accrual ... remains a judicial function.' " *Nevin v. Union Trust Co.*, 1999 ME 47, ¶ 24, 726 A.2d 694, 699 (quoting *Anderson v. Neal*, 428 A.2d 1189, 1191 (Me.1981)).

[¶ 12] Pursuant to the general rules of accrual, all of the claims accrued either at the time that construction was completed, in the case of Dunelawn Owners' Association, or at the time of purchase, in the Caffrays's individual cases. It was at those times that Gendreau breached a duty to, respectively, construct a condominium and convey a condominium unit free of material defects. *See, e.g., Andreoli v. John Henry Homes, Inc.*, 297 Ill.App.3d 151, 231 Ill.Dec. 622, 696 N.E.2d 1193, 1196 (1998) (holding that "the time of accrual ... governing a purchaser's suit against a builder to recover for latent defects in the purchaser's new house begins from the date when the house is conveyed"); *Jaworsky v. Frolich*, 850 P.2d

----

10. This section governs express warranties, which are not at issue in this case.

11. Dunelawn's claim for "strict liability" is problematic for reasons unrelated to the statute of limitations. In order to have a claim pursuant to 14 M.R.S.A. § 221, there must be a defective good or product. *See* 14 M.R.S.A. § 221 (1980); *Fuller v. Central Maine Power Co.*, 598 A.2d 457, 460–61 (Me.1991) ("[I]n the state of flowing through a high-voltage transmission line, electricity is not a product within the meaning of ... 14 M.R.S.A. § 221

...."). Gendreau takes issue with whether this case involves a product. Whether an installed electrical system is a good or a product is an issue of first impression in this Court. Because entry of a summary judgment against this claim is warranted based on the statute of limitations, we decline to address this issue at this time. For the same reason, we do not address Gendreau's argument that Dunelawn's tort claims are also barred by the economic loss doctrine. *See Oceanside at Pine Point Condominium Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267, 271 (Me.1995).

1052, 1054 (Okla.1992) (applying rule that "the statute of limitations starts to run for breach of a construction contract ... 'when the contract is completed'"); *Stephens v. Creel*, 429 So.2d 278, 280 (Ala. 1983) (holding that breach of warranty of habitability is a contract claim that accrues when the defendant completes performance); *Calamel v. Ridge View Realty Corp.*, 115 A.D.2d 279, 496 N.Y.S.2d 154, 154 (1985) ("In our view, plaintiffs' claim is essentially one for breach of contract and, therefore, could not accrue later than the date the contract was completed ....").

■ [¶ 13] Dunelawn argues that we should apply the discovery rule to their claims for breach of warranty, strict liability, and negligence. The discovery rule is an exception to the general rule that accrual occurs at the time of a judicially cognizable injury. *See Anderson*, 428 A.2d at 1191–92 (holding that a "cause of action based on an allegedly negligent title search accrues at the time the plaintiff discovers, or reasonably should have discovered, his injury") (Dufresne, A.R.J., dissenting).

■ [¶ 14] The basis for our ruling in *Anderson* was that the "reliance placed upon the attorney by the client and the lack of means for discovery place the client in a situation akin to that of one who has had a cause of action fraudulently concealed from him." *Id.* at 1192. The significance of the fiduciary relationship to the application of the discovery rule was reiterated most recently in *Nevin*, 1999 ME 47, ¶ 30, 726 A.2d at 700, in which we applied the discovery rule to claims against a fiduciary providing financial management services. Although the facts of this case present a difficult to discover breach, the absence of a fiduciary relationship in these facts prevents the application of the discovery rule. *See Nevin*, ¶ 25 at 699; *see also Johnston*, 686 A.2d at 1066–67 (declining to apply a discovery rule in an

action against surveyors for negligent preparation of a survey);[12] *cf. Bozzuto v. Ouellette*, 408 A.2d 697, 699 (Me.1979) ("[I]gnorance of the defendant's misfeasance for about seven years does nothing by itself to prevent the running of the statute of limitations.").

[¶ 15] Dunelawn finally contends that the statute of limitations should not be applied to implied warranty claims. They suggest instead that the appropriate inquiry should be what constitutes a reasonable warranty duration. *See, e.g., Tavares v. Horstman*, 542 P.2d 1275, 1282 (Wyo.1975) (holding that "the duration of liability is determined by the standard of reasonableness" and the failure of a septic system within a year of its construction violated the warranty of habitability associated with the sale of a new home); *Hershey v. Rich Rosen Constr. Co.*, 169 Ariz. 110, 817 P.2d 55, 61 (1991) (holding that because a stucco exterior has a normal life expectancy in the Arizona desert of thirty to fifty years the trial court did not err in its factual determination that the implied warranty of habitability reasonably extended twelve years beyond the date of construction); *cf. Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768, 769 (1980) (holding that the "length of time for latent defects to surface ... should be controlled by the standard of reasonableness"). Thus, Dunelawn contends that ten plus years is not an unreasonable time span for the implied warranty of habitability to cover their electrical systems.

■ [¶ 16] Although the reasonable duration of an implied warranty may be an appropriate inquiry when it is raised as a defense to an implied warranty claim, we reject the contention that an implied warranty claim should survive the statute of limitations because the implicit duration of the warranty exceeds the limitations period. Because the implied warranty was

12. In 1993, after the cause accrued that gave rise to our ruling in *Johnston*, the Legislature enacted a new statute of limitations for ac-

tions brought against professional land surveyors. *See* 14 M.R.S.A. § 752–D (Supp. 1999).

 

breached at the time of construction and conveyance, the statute of limitations essentially imposes a limit to the implied warranty's duration.[13]  Accordingly, the implied warranty claim is barred as a matter of law.

The entry is:

Judgment affirmed.

---

13. That duration is not necessarily six years, it may be extended for fraud, 14 M.R.S.A. § 859 (Supp.1999) (not an issue here), minor- ity, or other disability, 14 M.R.S.A. § 853 (Supp.1999), or other reasons that impact the duration of a limitations period.