MC/

STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. CV-10-429
                                        JAW – CUM – 9/16/2011

JOHN MURPHY and
ROXANNE MURPHY,

        Plaintiffs

        v.                              ORDER ON MOTION FOR
                                        SUMMARY JUDGMENT

ELLIOTT CHAMBERLAIN and
CHAMBERLAIN CONSTRUCTION,
INC.,

        Defendants

BEFORE THE COURT

This matter came before the court on defendants' motion for summary judgment on all claims.

BACKGROUND

For the purposes of the motion for summary judgment, the following material facts are not in dispute.[1] In 2003, Chamberlain Construction built a home at 12 Fowler Farms Road (the "home") in Scarborough. Maine. Defs.' Stat. Mat. Facts ¶ 4. Elliott Chamberlain is the President and sole shareholder of Chamberlain Construction. *Id.* ¶ 3. On September 30, 2003, Chamberlain Construction entered into a contract to sell the home to Christopher Ras and Jeri Ras. *Id.* ¶ 5. On November 21, 2003, ALC Development Corporation, of which Chamberlain was the President, transferred the home to Christopher Ras and Jeri Ras. *Id.* ¶¶ 7, 8. Chamberlain Construction's work on the home was

---

[1] Defendants admitted certain allegations for the limited purpose of summary judgment, reserving the right to challenge these allegations at a later stage of this proceeding.

substantially completed prior to the transfer of the home to Christopher Ras and Jeri Ras. *Id.* ¶ 9.[2] Any outstanding work would have been completed within the next few months in 2003 and 2004. *Id.* ¶ 10.

Christopher Ras and Jeri Ras sold the home to John Murphy and Roxanne Murphy on November 22, 2005. *Id.* ¶ 12. At no time were the Murphy's informed of or made aware of the substantial construction defects likely to cause premature rotting of the structure. Pls. Reply Stat. Mat. Facts ¶ 6. The Murphy's housing inspector, Apex I-Tome Inspections, found no defects beyond some problems with the chimney. Pls. Reply Stat. Mat. Facts ¶ 7.[3] The Murphys did not discover that the house had substantial construction defects until 2010 when they noticed mushrooms growing on the clapboards at the backside of the home. Pls. Reply Stat. Mat. Facts ¶ 9. At that point they hired Steven Beaulieu to make repairs to their home. *Id.* ¶ 10.

The construction of the home includes improper workmanship or materials. *Id.* ¶ 19. This improper workmanship includes a lack of foam or insulation in the gap underneath one of the windows. *Id.* ¶ 47. It also includes a lack of house wrap on one side of the house, except for a small piece on the top and the bottom of a window. *Id.* ¶¶ 48, 49. This improper workmanship was hidden by the builders by finish work or was in areas not easily accessible or discoverable on inspection by the homeowner or by the Town Inspector. *Id.* ¶ 19.

On August 30, 2010, John Murphy and Roxanne Murphy filed a multi-count complaint alleging negligence (Count I), misrepresentation/fraud (Count

---

[2] Although plaintiffs purport to deny Defs.' Stat. Mat. Facts ¶ 9, their response is improper argument and, as such, is improper in a statement of material facts. Accordingly, Defs.' Stat. Mat. Facts ¶ 9 is deemed admitted.

[3] Issues regarding the chimney are not part of this litigation.

II), unfair trade practices (Count III), breach of implied warranties (Count IV) and punitive damages (Count V). Defendants argue in their motion for summary judgment that all claims are barred by the applicable statute of limitations. Mr. Chamberlain also alleges in the motion for summary judgment that he cannot be held personally liable as Chamberlain Construction is a corporation and the facts in the record do not support piercing the corporate veil and holding Mr. Chamberlain personally liable for the acts of Chamberlain Construction.

Plaintiffs counter that the statute of limitations does not bar their action because they did not discover the defects and resulting damage until 2010. They argue for a date of discovery on all claims. Alternatively, the plaintiffs argue that the defendants fraudently concealed the causes of action until 2010; therefore, their cause of action did not accrue until 2010. They assert that the "[d]efendants are not absolved of liability for fraud merely because a subsequent innocent purchaser acquired the property, especially where the purchaser was duped by the same fraudulent concealment as the original owner." Pls.' Obj. to Defs.' Mot. Summ. J. 13.

DISCUSSION

I.      **Standard of Review**

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v.*

3

*McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. Rule 56(h) requires a party that is opposing a motion for summary judgment to support any qualifications or denials of the moving party's statement of material facts with record citations. *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6 n. 5, 770 A.2d 653, 655 n. 5. The Law Court has clearly and succinctly spelled out the requirements for non-moving parties in summary judgment practice, stating:

> To avoid a summary judgment, the nonmoving party must respond by filing (1) a memorandum of law in opposition to the motion for summary judgment; (2) a statement of material facts in opposition, with appropriate record references; and (3) copies of the corresponding record references.

*Id.* ¶ 6, 770 A.2d at 655-56. "All facts not properly controverted in accordance with this rule are deemed admitted." *Rogers v. Jackson*, 2002 ME 140 ¶ 7, 840 A.2d 379, 380-81 (*citing* M.R. Civ. P. 56(h)(4)).

## II.    Statute of Limitations

### A. Discovery Date as Applied to Counts I, III and IV

In Maine, "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards . . . except as otherwise specifically provided." 14 M.R.S.A. § 752 (2009). Claims brought pursuant to the Unfair Trade Practices Act are "subject to Maine's six-year statute of limitations period for civil actions." *Campbell v. Machias Savings Bank*, 865 F. Supp. 26, 34 (D. Me. 1994). *See also State v. Bob Chambers Ford*, 522 A.2d 362, 364 (Me. 1987). A defective product claim constitutes a breach of warranty claim and is subject to the four-year statute of limitations. *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267, 272 (Me. 1995).

An action accrues "when a plaintiff received a judicially recognizable injury," *McLaughlin v. Superintending Sch. Comm. of Lincolnville*, 2003 ME 114, 832

4

A.2d 782, 788 (quoting *Johnston v. Dow & Coloumbe Inc.*, 686 A.2d 1064, 1065-66 (Me. 1996)), regardless of when the injury was discovered. *See, e.g., Bozzuto v. Ouellette*, 408 A.2d 697, 699 (Me. 1979) (the plaintiff's "ignorance of defendant's misfeasance for about seven years does nothing by itself to prevent the running of the statute of limitations."). It does not matter that plaintiff is not aware of his injury or the extent of the damages. *Dugan v. Martel*, 588 A.2d 744, 746 (Me. 1991) ("ignorance of a cause of action does not prevent the statute of limitations from running.")

Thus, a contract claim "accrues at the time of the breach." *Dunelawn Owners' Ass'n v. Gendreau*, 2000 ME 94, ¶ 11, 750 A. 2d 591, 595. A tort claim accrues "when the plaintiff sustains harm to a protected interest." *McLaughlin*, 2003 ME ¶ 22, 832 A. 2d at 788 (citations and quotation marks omitted). A cause of action in the context of home construction for claims of strict liability or breach of warranty accrue as of the time of purchase or when construction is completed. *E.g., Oceanside at Pine Point Condo. Owners Ass'n*, 659 A.2d at 271-72 (defective product claim barred by the four-year statute of limitations because cause of action accrued when windows were delivered or the project was completed); *Dunelawn Owners' Ass'n*, 2000 ME 94, ¶ 12, 750 A.2d at 595-96 (claims of breach of warranty and strict liability accrued at time of construction and conveyance and are barred by warranty statute of limitations). Claims based on negligent installation of a particular home component by a contractor accrue on the date of completion of the negligent installation. *Dugan*, 588 A.2d at 746. Thus, the statute of limitations on contract, negligence, and warranty claims against a contractor begins to run at the time that the contract is completed, even if the defect is difficult to discover. *Id.*

5

Although accrual of an action occurs generally at the time a judicially cognizable injury is sustained, the Maine Supreme Judicial Court, acting as the Law Court, has recognized discrete exceptions to the general rule and applies a discovery rule in particular cases of medical malpractice, legal malpractice, and asbestosis. *Johnson*, 686 A.2d at 1066. The Law Court has also extended the discovery rule to circumstances where a fiduciary or confidential relationship exists, the plaintiff relies on the defendant/fiduciary's advice, and the cause of action would otherwise be virtually undiscoverable without an investigation, which would damage the nature of the relationship. *Nevin v. Union Trust Co.*, 1999 ME 47, ¶ 25, 726 A.2d 694, 699. *Cf. Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶ 11, 762 A.2d 44, 46 ("Standing alone, a creditor-debtor relationship does not establish the existence of a confidential relationship.").

On the basis of this case law, the court rejects plaintiffs' first argument that the statute of limitations should not begin to run until they discovered the defects in 2010. The home was substantially completed in November 2003 prior to the transfer of the home to Christopher and Jeri Ras. At the latest, any outstanding work was completed within the next few months after the transfer in November 2003. Defs.' Stat. Mat. Facts ¶ 10. Thus, any claims sounding in negligence and violation of Unfair Trade Practices as alleged in Counts I and III must have been brought by November 2009 or early 2010 at the latest to fall within the six year statute of limitations and any warranty claims as alleged in Count IV must have been brought by early 2008 at the latest to fall within the four year statute of limitations period. The plaintiffs have not asserted claims for which the Law Court has recognized the discovery rule. Because the plaintiffs

6

did not assert Counts I, II, and IV against defendants until August 30, 2010, outside of the limitations period, those claims are time barred.

## B. Fraudulent Concealment

Plaintiffs allege in Count II of their Second Amended Complaint, encaptioned "Misrepresentation/Fraud," that the defendants "made false representations of material facts by deliberately failing to use proper materials and good workmanship and by fraudulently hiding the obvious deficiencies in the construction of the Fowler house." Pls.' Second Am. Compl. ¶ 13. The defendants "made those representations with knowledge of their falsity or in reckless disregard of the truth or falsity of them." *Id.* ¶ 14. The defendants did this "for the purpose of inducing the Plaintiffs to act or to refrain from acting." *Id.* ¶ 15. The plaintiffs allege that they "justifiably relied upon the false and material statements to their detriment," *Id.* ¶ 16, and that as a result of defendants' "fraudulently hiding the deficiencies in the construction of the Fowler house, the Plaintiffs had no notice of them and were unable to take legal action until damage to their home caused by those deficiencies manifested, starting in 2010." *Id.* ¶ 17.[4] In short, plaintiffs contend that the defendants fraudulently concealed defective construction work from their discovery until 2010, thereby implicating 14 M.R.S.A. § 859.[5] Plaintiffs also assert that genuine issues of material fact exist regarding the concealment of the defects. Pls.' Obj. to Defs.' Mot. Summ. J. 9-13.

---

[4] The parties have not raised, nor has the court addressed, whether these allegations in the complaint allege fraud with the requisite specificity of M.R.Civ.P. 9.

[5] Section 859 provides: "If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto . . . the action may be commenced at anytime within six years after the person entitled thereto discovers that he has a just cause of action."

7

To successfully state a claim for fraudulent concealment under Maine law a plaintiff

> must establish both a concealment and a fraudulent intent or design to prevent discovery of facts giving rise to [its] cause of action. Furthermore, [it] must show that the defendant had actual knowledge of a fact before the defendant can be charged with an intent or design to conceal it from the plaintiff.

*Bangor Water Dist. v. Malcolm Pirnie Eng'g*, 534 A.2d 1326, 1329 (Me. 1988) (citation and quotation marks omitted). "Section 859 requires no less than the demonstration of the defendant's actual knowledge of the concealed fact and the fraudulent intent or design of preventing its discovery by the plaintiff." *Id.*

When the plaintiff alleges a failure to disclose, rising to the level of misrepresentation, Maine law also requires the plaintiff to prove "active" concealment of the truth or a specific relationship imposing a duty to disclose. *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995). "'Active concealment of the truth' connotes steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer v. Mark Stimson Assoc.*, 1999 ME 184, ¶ 23, 742 A. 2d 898, 905. In *Fitzgerald*, a seller of real estate did not disclose to the buyer that the well water was not safe to drink until after the closing, even though the seller knew the well had been abandoned because of contaminated water and the seller had been using a neighbor's water source. The seller reconnected the well a few days before the closing and had the water tested again but it was still unsafe. The seller did not share this information with the buyer before the closing.[6] The court held that these were sufficient facts to constitute active concealment. *Fitzgerald*, 658 A.2d at 1069. In contrast, the *Kezer* court found that a seller who did not disclose the fact that a neighbor complained of contaminated well water and that

---

[6] The issue of privity did not exist in *Fitzgerald*.

the Department of Environmental Protection was testing the area had not actively concealed any facts from the buyer. *Kezer*, 1999 ME 84, ¶ 25, 742 A.2d at 905.

Fraudulent intent may be established not only by proving that the defendant desired the plaintiff to rely on the misrepresentation but also by establishing that the defendant "believes that another is substantially certain to act in a particular manner as a result of a misrepresentation...." *McKinnon v. Tibbetts*, 440 A.2d 1028, 1030-31 (Me. 1982) (citing Restatement (Second) of Torts § 531, cmt. c). Therefore, a "[d]efendant may be liable for fraud even though he may not have profited from the representation." *Id.* at 1030. In *Ward v. Glover*, 2006 Me. Super. LEXIS 227 (Oct. 25, 2006), the plaintiff, a buyer of a condominium unit, alleged fraudulent misrepresentation against the condominium association for statements made regarding needed repairs to the building façade. This court found it inappropriate to grant summary judgment in favor of the association on the element of intent, even though the association had no financial interest in the sale of a unit, because the association could have been substantially certain that the buyer would act in a particular manner after hearing the statement made. *Ward v. Glover*, 2006 Me. Super. LEXIS 227 at, *18-19.

Furthermore, a defendant is liable to the person or class of persons who he intends, or expects may, act on the misrepresentation. Restatement (Second) of Torts § 531 (1977). In a Pennsylvania case, where a contractor did not install a grey water sewer line connecting a home with the municipal sewer system as he was contracted to do but did fill in the hole he dug, did install a "camouflage" standpipe, and had the system inspected by municipal authorities (subsequent to

9

replacing the fill in violation of the inspection requirements), the court held that "[w]hen fraud creates or conceals a latent defect, transfer of the defective chattel or realty to an innocent third party should not absolve the wrongdoer from liability for damages caused by that undiscovered fraud." *Woodward v. Dietrich*, 548 A.2d 301, 316 (Pa. Super. Ct. 1988). Although there is no Maine case law precisely on point, this conclusion is the logical implication of Restatement (Second) of Torts § 531, as illustrated by comment e:

> The maker may have reason to expect that his misrepresentation will reach any of a class of persons, although he does not know the identity of the person whom it will reach or indeed of any individual in the class…The class may include a rather large group, such as potential sellers, buyers, creditors, lenders or investors, or others who may be expected to enter into dealings in reliance upon the misrepresentation.

Restatement (Second) of Torts § 531, cmt. e (1977).[7] Thus, when a defendant has made statements or actively concealed facts that a subsequent innocent purchaser of real estate would rely on, the lack of privity between the parties does not preclude proving the element of intent.

The court may not grant summary judgment if the record reveals material factual disputes concerning whether the defendants had actual knowledge of the deficient construction or materials and actively concealed its acts with the intent to prevent their discovery by the plaintiffs.

---

[7] The plaintiffs have cited to several cases from other jurisdictions to support the proposition in Restatement (Second) of Torts § 531 and the *Woodward* case that the lack of privity between a wrongdoer and a subsequent innocent purchaser does not absolve the wrongdoer from liability. *See Rhee v. Highland Dev. Corp.*, 958 A.2d 385 (Md. Ct. Spec. App. 2008); *Terlinde v. Neely*, 271 S.E.2d 768 (S.C. 1980); *Herz v. Thornwood Acres "D," Inc.*, 381 N.Y.S.2d 761 (1976); *Barnhouse v. City of Pinole*, 183 Cal. Rptr. 881 (Cal. Ct. App. 1982). The defendants distinguish these cases only on the facts, not the legal propositions therein. Defs. Reply Mem. 4. The Law Court appears to have adopted § 531 of the Restatement (Second) of Torts in *McKinnon v. Tibbets*, 440 A.2d 1028 (Me. 1982). Although *McKinnon* focuses on whether the defendant could have intended reliance when he did not profit from the fraud, the proposition stated in comment c of section 531, the court would likely recognize the entire section.

> When a plaintiff contends that a genuine issue of material fact concerning the defendant's fraudulent concealment has been generated, the court assesses the facts against the elements of fraud: '(1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for purposes of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other.'

*Brawn v. Oral Surgery Assoc.*, 2003 ME 11, ¶ 21, 819 A. 2d 1014, 1026 (quoting *Harkness v. Fitzgerald*, 701 A.2d 370, 372 (Me. 1972)). "The party must establish the facts demonstrating fraudulent misrepresentation or omission by clear and convincing evidence." *North East. Ins. Co. v. Young*, 2011 ME 89, ¶ 19, ___ A.3d ___.

Defendants argue that plaintiffs' allegations of fraud and misrepresentation against the defendants are insufficient to allow the tolling of the general six-year statute of limitations under 14 M.R.S.A. § 859. The defendants contend that they did not make any false representations of material facts to the plaintiffs. They also argue that they could not have made false or reckless statements to induce the plaintiffs to purchase the house as they were unaware of any defects and they did not have access to home after the Ras family purchased it. In short, defendants contend that the plaintiffs have not provided any evidence that would establish their fraud claim under the five-prong test established in *Brawn*. Defs.' Memo. Summ. J. 7-8. The court, however, finds otherwise. The plaintiffs have successfully raised genuine issues of material fact such that summary judgment is inappropriate on the issue of fraudulent concealment.

11

### 1.   *Actual Knowledge*

The defendants state that Mr. Chamberlain was unaware of any alleged construction defects or water damage in the home prior to receiving notice from the plaintiffs in June 2010. Defs.' Stat. Mat. Facts ¶ 20. However, the citation for this fact does not provide support. Defendant's Statement of Material Fact, paragraph 20 cites to paragraph 18 of Mr. Chamberlain's affidavit which says, "This [June 7, 2010 email from Mr. Murphy] was the first time I was informed by the Plaintiffs that they believed there were problems with the house, other than the chimney, at 12 Fowler Farms Road." The affidavit statement indicates that Mr. Chamberlain was previously unaware that the Plaintiffs had knowledge of any defects in the house but it does not indicate that Mr. Chamberlain himself had no knowledge of defects in the construction. Furthermore, the defendants do not state that Chamberlain Construction had no knowledge of any defects in the construction of the home. Chamberlain Construction employed a foreman on the construction site who worked directly with the subcontractors. Pls. Reply Stat. of Mat. Facts ¶ 3.[8] Therefore, Mr. Chamberlain's knowledge is not identical to that of Chamberlain Construction because the knowledge its foreman obtained while at the site might be imputed to the corporation.

The plaintiffs assert "[i]n some instances, improper workmanship or materials were hidden by the builders by finish work or were in areas not easily accessible or discoverable on inspection by the homeowner or by the Town Inspector." Pls.' Reply Stat. Mat. Fact ¶ 19. The defendants have not challenged this statement and have in fact admitted it for the purposes of summary

---

[8] The defendants purport to deny this statement of material fact. However, the response given only challenges the statement with regard to Elliot Chamberlain's involvement with the day-to-day operation of the job site, not Bill Reny, the foreman.

12

judgment.  Additionally, the plaintiffs assert that "[t]here were apparent attempts to correct some of the poor workmanship or improper materials by the original builders...."[9] *Id.* ¶ 17.  Again, the defendants have admitted this statement for the purposes of summary judgment.  It is unclear from the Plaintiffs' Reply Statement of Material Facts whether the term "builders" includes the defendants or just subcontractors.  However, because the defendants have not objected and because the facts are to be construed in the light most favorable to the non-moving party, the court understands these statements of fact to implicate the defendants.

The court finds these two plaintiffs' statements, coupled with the fact that the defendants have not properly supported their alleged lack of knowledge, are sufficient to find that the defendants are not entitled to judgment as a matter of law regarding the defendants' actual knowledge of defects in the construction of the home.  If the defendants participated in concealing defects with finish work or made attempts to repair the alleged defects, this is evidence of actual knowledge.  Thus, a genuine issue of material fact has been generated on the issue of actual knowledge.

---

[9] The full statement of material fact is: "There were apparent attempts to correct some of the poor workmanship or improper materials by the original builders, indicating that the builders knew of problems at the time of construction, but their fixes were blatantly wrong."  Pls. Reply Stat. Mat. Facts ¶ 17.  The defendants object to this statement of material fact on the grounds that it sets forth an improper factual and/or legal conclusion.  The court finds that the first clause of this statement is a proper factual statement and must be considered on this motion for summary judgment.  However, the remainder of the statement is improper factual conclusion and is not considered.

13

## 2. *Active Concealment*

Whether there was active concealment depends on whether the defendants' actual knowledge can be proven. The defendants' admission that improper workmanship or materials were hidden by finish work in areas not easily accessible or discoverable is evidence of active concealment. Based on the standard articulated in *Fitzgerald* and *Kezer*, the defendants took steps to hide the true state of affairs (a house constructed without the expected materials and craftsmanship) from the plaintiffs. The fact that the siding and finish work were steps that the defendants would have taken anyway to finish the house does not relieve them of the fact that these steps were also taken to conceal the defects in the construction of the home. This is similar to the situation in *Woodward* where the contractor finished the job by filling in the opening, which he would have done to complete the job, and by doing so concealed from the homeowner, the subsequent purchaser, and the municipal inspection authority, the fact that he did not complete the required work.

The only way to discover the defects in the construction of the home would have been to remove the siding. This is an action that would have been unreasonable for the plaintiffs to take, especially when they and their professional home inspector had no indication from the exterior that there were latent defects. However, if the defendants prove they had no actual knowledge of the construction problems then completing the construction would not be active concealment.

Whether the completion of the home was a step taken to hide the true state of affairs from the plaintiffs depends entirely on whether the defendants had actual knowledge of the alleged defects. Because summary judgment is

14

improper on the element of actual knowledge, it is similarly improper on this element.

### 3. *Fraudulent Intent*

The defendants claim that the plaintiffs have failed to prove fraudulent intent because the defendants received no financial benefit from the transaction between the Rases and the Murphys and because the defendants did not make any statements for the purpose of inducing the Murphys' purchase. Defs.' Stat. Mat. Facts ¶¶ 13, 14. The plaintiffs admit that no statements were made but allege that the defendants benefitted indirectly from their purchase. Pls. Resp. to Defs.' Stat. Mat. Facts ¶¶ 12, 14. They also allege that the fact that there was no privity between themselves and the defendants does not preclude a finding of fraudulent intent because they are included in the class of people who the defendants "intended or had reason to expect would act in reliance on their fraud." Pls.' Obj. to Defs.' Mot. Summ. J. 15-16.

The defendants do not address the standard articulated in section 531 of the Restatement (Second) of Torts and make no factual assertions that they did not believe that it was substantially certain that a subsequent purchaser of the home would act on the representation that the home was properly constructed. On the other hand, the plaintiffs allege that the amount they paid for the house was based in part on their belief that the property was of excellent quality inside and out. Pls.' Reply Stat. Mat. Facts ¶ 8. That is, they did rely on the defendants' representation to the Rases, based on the pricing of the home, that the home was of excellent quality.

To prove fraudulent intent the plaintiffs must establish that they were in the class of people who the defendants may have expected to rely on a

15

misrepresentation. The plaintiffs may establish this element by demonstrating that the defendants believed that subsequent purchasers were substantially certain to act in a particular manner as a result of a misrepresentation. There are insufficient facts alleged on either side to make a finding of fraudulent intent and the defendants are not entitled to judgment as a matter of law on this element.

The summary judgment record reveals genuine issues of material fact with respect to each element of the plaintiffs' claim for fraudulent concealment. The defendants have failed to establish that the claim must fail and, therefore, are not entitled to judgment was a matter of law.

## III. Personal Liability

The plaintiffs have asserted each count of their complaint against both Chamberlain Construction and Mr. Chamberlain. The defendants have moved for summary judgment on all claims with respect to Mr. Chamberlain individually alleging that he is an improper party because he did not construct the home in his individual capacity. Defs. Mem. Summ. J. 11-12. The plaintiffs assert two theories on which Mr. Chamberlain may be held individually liable: abuse of the corporate form and agency. Pls.' Obj. to Defs.' Mot. Summ. J. 18-19.

The corporate form creates a separate legal entity providing limited liability to the owners of the corporation. However, courts may disregard the corporate form when the form has been used to perpetrate fraud or illegality. *State v. Weinschenk*, 2005 ME 28, ¶ 19, 868 A.2d 200, 207. A court will only "pierce the corporate veil" if the plaintiff can establish both (1) that the defendant abused the privilege of the separate corporate form and (2) an unjust or inequitable result would occur if the corporate form were not disregarded. *Id.*

16

Corporate officers can be held liable for wrongful conduct even without piercing the corporate veil. *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 13, 901 A.2d 189, 195. Liability stems from the wrongful act, not from facts that would suggest piercing the corporate veil. *Id.* Furthermore, "[i]n an action for the tortious conduct of an agent, both the agent and the principal can be held liable." *Id.* at ¶ 16.

The plaintiffs allege that an unjust or inequitable result will occur if the court does not pierce the corporate veil of Chamberlain Construction because "the purveyor of fraud will keep the benefit of ill-gotten gains, without discount for hidden construction defects, and the innocent subsequent purchasers will be left to pay for them without remedy." Pls.' Obj. to Defs.' Mot. Summ. J. 18-19. This allegation does not support a finding that the plaintiffs are without remedy and the plaintiffs have not submitted any statement of material fact indicating that Chamberlain Construction would not be able to pay any damages that they may be awarded. Because the plaintiffs fail to meet the second part of the test for piercing the corporate veil, the court does not need to consider facts supporting the first part of the test and will not disregard the corporate form.

Whether Mr. Chamberlain has engaged in wrongful conduct and, as an agent of the corporation, should be held liable for his conduct, is a question of fact that in this case cannot be decided on summary judgment because there are genuine issues of material fact as to both defendants' liability for fraudulent concealment.

## IV. Punitive Damages

In Count V, the Plaintiffs seek punitive damages. Punitive damages may only be awarded upon a showing of malice. *Tuttle v. Raymond*, 494 A.2d 1353,

17

1361 (Me. 1985). Malice may be proven by evidence of express malice: that is, ill will toward a particular individual. *Id.* It may also be proven by evidence of implied malice: that is, deliberate conduct that, although not motivated by ill will, is so outrageous that malice is implied. *Id.* To establish implied malice requires more than "reckless disregard of the circumstances." *Id.* Punitive damages are only available if the plaintiff is awarded compensatory or actual damages based on the defendant's tortious conduct. *Jolovitz v. Alfa Romeo Distribs. of N. Am.*, 2000 ME 174, ¶ 11, 760 A.2d 625, 629.

The plaintiffs do not allege express malice. Instead, they argue that the fraudulent concealment of the defects in their home, combined with the defects alleged to exist in the other homes in the neighborhood built by Chamberlain Construction, is sufficiently outrageous to prove malice. Pls.' Obj. to Defs.' Mot. Summ. J. 19-20. There are genuine issues of material fact regarding whether there was fraudulent concealment. Because the fraudulent concealment claim is inappropriate for resolution on summary judgment, the issue of punitive damages is similarly inappropriate because it is unknown if there will be an award for compensatory damages.

## CONCLUSION

The Court orders that the Defendants' Motion for Summary Judgment be GRANTED on Counts I, III, and IV because the plaintiffs claims are barred by the statute of limitations. The Court orders that the Defendants' Motion for Summary Judgment is DENIED with respect to both defendants on Counts II and V because there are genuine issues of material fact and the defendants are not entitled to judgment as a matter of law.

The entry is:

18

Summary Judgment GRANTED to defendants on Counts I, III, and IV and DENIED to defendants on Counts II and V.

September 16, 2011

Joyce A. Wheeler, Justice

PLAINTIFF'S ATTY -
   DAVID HERZER ESQ

DEFENDANT'S ATTY -
   ELIZABETH STONDER, ESQ.

19