See also 446 Mass. 188, 843 N.E.2d 617; 568 F.3d 287.

**Michael O'LAUGHLIN, Plaintiff**

**v.**

**CITY OF PITTSFIELD,
et al., Defendants.**

**C.A. No. 13–cv–10111–MAP.**

United States District Court,
D. Massachusetts.

Dec. 30, 2013.

Patricia A. McArdle, Law Office of Patricia A. McArdle & Associates, P.C., Mattapoisett, MA, for Plaintiff.

Joseph L. Tehan, Jr., Jackie A. Cowin, Kopelman & Paige, PC, Boston, MA, Jeremia A. Pollard, Hannon Lerner, Lee, MA, Thomas P. Campbell, III, Thomas P. Campbell, P.C., South Natick, MA, Austin M. Joyce, John K. Vigliotti, Reardon, Joyce & Akerson PC, Worcester, MA, Joseph P. Kittredge, Margaret A. Rubino, Rafanelli & Kittredge, PC, Acton, MA, Bart Q. Hollander, Attorney General's Office, Springfield, MA, Joseph G. Donnellan, Rogal & Donnellan, P.C., Norwood, MA, for Defendants.

### MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS

(Dkt. Nos. 74, 76, 78, 81, 83, 85, & 87)

PONSOR, District Judge.

## I. INTRODUCTION

In May 2002, a Massachusetts Superior Court sentenced Plaintiff Michael O'Laughlin to 35 to 50 years in prison after a jury convicted him of four charges stemming from a brutal armed assault on a woman in her apartment. On June 10, 2009, after Plaintiff had served nine years in prison, the First Circuit ordered Plaintiff's unconditional release with prejudice to reprosecution, based on its conclusion that his conviction on the four offenses was "objectively unreasonable." *O'Laughlin v. O'Brien,* 568 F.3d 287, 308 & 309 (1st Cir.2009). On September 1, 2009, the United States District Court for the District of Massachusetts granted Plaintiff's writ of habeas corpus and released him on conditions. On January 19, 2010, the United States Supreme Court denied the Commonwealth's petition for certiorari, and Plaintiff resumed his life unconditionally, as a free man.

On January 18, 2013—over three years after his release from prison and just under three years following the Supreme Court's denial of certiorari—Plaintiff filed a section 1983 complaint in this court alleging civil rights violations and malicious prosecution. He named twenty-two defendants, including three towns, several police

officers, and a district attorney.[1] All Defendants moved for dismissal based, *inter alia,* on the statute of limitations. The parties appeared before the court on December 12, 2013, for argument on the motions. Because Plaintiff did not file his claims within the three-year limitations period, the court granted Defendants' motions at the conclusion of the hearing, setting forth its reasoning in summary fashion.[2] This memorandum will explain the court's decision in greater detail.

## II. *FACTS*

The extraordinary background of this case involves the brutal beating of Annmarie Kotowski in her apartment in Lee, Massachusetts on the morning of November 17, 2000; the investigation that followed; the subsequent arrest and conviction of Plaintiff for the assault; and the procedural course traveled by Plaintiff in pursuit of relief that ended with the First Circuit's order overturning his conviction and ordering his release from prison. The First Circuit's opinion, *O'Laughlin v. O'Brien,* 568 F.3d 287, 290–5 (1st Cir. 2009), thoroughly lays out the facts of the original crime, the police investigation, the leads the police did not follow, the trial, and the appeals of the original conviction. Because the issue of the timeliness of Plaintiff's complaint ultimately determines this court's rulings, it is this last piece—the procedural history—that is relevant here.

In addressing the pending motions, the court will, of course, accept Plaintiff's well-pleaded facts as true and draw all reasonable inferences in his favor. *Erlich v. Ouellette, Labonte, Roberge & Allen, P.A.,* 637 F.3d 32, 34 n. 1 (1st Cir.2011). The following recitation of facts is limited to the procedural course of Plaintiff's appeal of his conviction, which is not disputed.

On December 6, 2000, a grand jury returned a four-count indictment against Plaintiff for the assault on Ms. Kotowski. On May 23, 2002, after a nine-day trial, the jury found Plaintiff guilty of all four counts, and on May 31, 2002, Plaintiff was sentenced to 35 to 50 years in prison at MCI–Cedar Junction. On July 8, 2005, the Appeals Court of Massachusetts ruled that "the evidence at trial was insufficient to support a guilty verdict." *Com. v. O'Laughlin,* 63 Mass.App.Ct. 805, 824, 830 N.E.2d 222 (2005). Based on this, the Appeals Court reversed the judgment of the trial court, set aside the verdict, and ordered that judgment should enter for Plaintiff. The Commonwealth appealed this decision. On March 10, 2006, the Supreme Judicial Court ("SJC") reversed the Appeals Court and affirmed the original convictions. *Com. v. O'Laughlin,* 446 Mass. 188, 189, 843 N.E.2d 617 (2006). Though the SJC characterized the question as "a close one," the court determined that, after reviewing the transcripts of the trial and the parties' arguments, there had

---

1. Plaintiff has since filed a First Amended Complaint (Dkt. No. 73), pleading six counts pursuant to § 1983, for violations of the 4th, 5th, 6th, and 14th Amendments' guarantees of rights to a fair trial and to due process of law, as well as for malicious prosecution. Plaintiff also reduced the number of Defendants to 17. They are: Police Officers J. Todd Briggs, William Bartini, William Tierney, Philip Skowron, Ronald Glidden, John Thibodeau, Brain Berkel, Neil Raymond, David Buell, Chrisopher Meiklejohn, Daniel

Pratt, Jean Thibodeau, Richard Smith, and Michael Hill; Berkshire County District Attorney, David Capeless; and the Towns of Lee and Dalton.

2. With Plaintiff's consent, the court previously entered judgments of dismissal for Defendant Capeless (Order Nov. 11, 2013, Dkt. No. 120), and for Defendants John Thibodeau and the Town of Dalton (Order Dec. 10, 2013, Dkt. No. 123).

been sufficient evidence to support the verdicts against Plaintiff. *Id.* at 190, 843 N.E.2d 617.

On March 1, 2007, Plaintiff filed a petition for writ of habeas corpus in federal court. On December 12, 2007, Judge William G. Young denied Plaintiff's petition. *O'Laughlin v. Russo,* Civ. A. No. 07–10430–WGY (D.Mass. Dec. 12, 2007) (Order of Dismissal, Dkt. No. 16). Plaintiff appealed the dismissal to the First Circuit. On June 10, 2009, the First Circuit reversed Judge Young's decision and ordered the district court to grant Plaintiff's petition. *O'Laughlin,* 568 F.3d at 290. The Commonwealth filed a petition for a rehearing en banc before the First Circuit and filed a motion to stay the release of Plaintiff with the district court. The First Circuit denied a rehearing on August 7, 2009. *O'Laughlin v. O'Brien,* 577 F.3d 1 (1st Cir.2009).

In response to the First Circuit's decision, the Commonwealth filed an application with Supreme Court Justice Stephen G. Breyer, in his capacity as Circuit Justice, seeking a stay of the First Circuit's mandate or, alternatively, imposition on Plaintiff of bail and other conditions of release. Plaintiff opposed the stay, but— other than the Commonwealth's request for $100,000 in bail—did not oppose the other eight conditions of release. *O'Brien v. O'Laughlin,* 557 U.S. 1301, 130 S.Ct. 5, 174 L.Ed.2d 602 (2009). On August 24, 2009, Justice Breyer issued an order staying the mandate of the First Circuit until further order. *O'Brien v. O'Laughlin,* No. 09A194 (Order, Aug. 24, 2009) (found at *O'Laughlin v. Russo,* Civ. A. No. 07–10430–WGY (Dkt. No. 30)) Two days later, on August 26, 2009, Justice Breyer vacated this stay and denied the Commonwealth's application for stay of the First Circuit's mandate. However, he ordered "the imposition of bail and other conditions of re-

lease to be determined by the District Court." *O'Brien v. O'Laughlin,* 557 U.S. 1301, 130 S.Ct. 5, 174 L.Ed.2d 602 (2009). On August 27, 2009, Judge Young issued an order setting the conditions of release, which included $20,000 bail, house arrest, and electronic monitoring. *O'Laughlin v. Russo,* Civ. A. No. 07–10430–WGY (D.Mass. Aug. 27, 2009) (Order for Release of Petitioner, Dkt. No. 32). Plaintiff was released on conditions on September 1, 2009. On October 21, 2009, the Commonwealth filed a petition for writ of certiorari with the Supreme Court. On January 19, 2010, the Court denied certiorari. *O'Brien v. O'Laughlin,* 558 U.S. 1158, 130 S.Ct. 1142, 175 L.Ed.2d 991 (2010). That same day, Judge Young terminated the conditions of release for Plaintiff, freeing him entirely. The funds posted as bail were released to Plaintiff two days later, on January 21, 2010.

Plaintiff filed his complaint in this court on January 18, 2013: three years and four months after his release from prison on September 1, 2009, and two years and 364 days after the Supreme Court denied the Commonwealth's petition for writ of certiorari on January 19, 2010.

### III. *DISCUSSION*

Defendants moved to dismiss on various grounds; each raised the issue of the untimeliness of Plaintiff's claims. Because this issue is dispositive—and has been resolved in favor of Defendants in accordance with the court's oral ruling following argument—the discussion below is limited to the statute of limitations.

A court may only grant a motion to dismiss based on the statute of limitations if, after evaluating the record in the light most favorable to the plaintiff, there is "no plausible basis" for finding the claim to be timely. *Erlich,* 637 F.3d at 34. The parties here do not dispute that the applicable

limitations period for section 1983 actions is three years. *E.g., Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (stating that the law of the state where the cause of action arises provides the length of the statute of limitations for section 1983 claims); *McIntosh v. Antonino,* 71 F.3d 29, 33–4 (1st Cir.1995) (noting that the Commonwealth's three-year limitations period for personal injury actions provides the limitations period for section 1983 actions). However, though the limitations period is set by the laws of the Commonwealth, "the jurisprudence of section 1983 directs [courts] to examine federal law in order to determine the accrual period." *McIntosh,* 71 F.3d at 34; *Wallace,* 549 U.S. at 388, 127 S.Ct. 1091.

■ The parties further agree that "a cause of action for malicious prosecution does not accrue until the termination of the criminal proceedings." *Nieves v. McSweeney,* 241 F.3d 46, 53 (1st Cir.2001) (citing *Heck v. Humphrey,* 512 U.S. 477, 489, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). The parties vigorously dispute, however, when the termination of the criminal proceeding occurred on the facts of this case. Was it, as Defendants assert, when the writ of habeas corpus issued and Plaintiff was freed from state custody, or was it, as Plaintiff asserts, when the Supreme Court ultimately denied certiorari categorically confirming the invalidity of Plaintiff's conviction? The Supreme Court's decisions in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Wallace v. Kato,* 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), lead inevitably to Defendants' position.

In *Heck,* the Supreme Court addressed the question of "whether a state prisoner may challenge the constitutionality of his conviction" using a section 1983 civil rights suit for damages. 512 U.S. at 478, 114 S.Ct. 2364. Instead of challenging his conviction via the traditional habeas corpus route, which contains an exhaustion requirement, 28 U.S.C. § 2254(b), the plaintiff in *Heck* filed a section 1983 suit while the appeal from his conviction was still pending in state court. In analyzing the question of whether, and when, a challenge to a conviction through the mechanism of a civil rights suit under section 1983 would be proper, the Court identified an action for malicious prosecution as the "closest analogy" to the civil rights claims asserted in *Heck. Id.* at 479 & 484, 114 S.Ct. 2364.

■ One element of a cause of action for malicious prosecution is "termination of the prior criminal proceeding in favor of the accused." *Id.* at 484, 114 S.Ct. 2364; *Nieves,* 241 F.3d at 53. The Supreme Court determined that, though the plaintiff's section 1983 complaint attacked the investigatory process and the trial, it also necessarily challenged "the validity of the outstanding criminal judgment[ ]." *Heck,* 512 U.S. at 486, 114 S.Ct. 2364. For the plaintiff to make out a successful section 1983 claim, he had to prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or *called into question* by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–7, 114 S.Ct. 2364 (emphasis added). It would not be proper for a plaintiff, such as Heck, to bring an action under section 1983 "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489, 114 S.Ct. 2364. In other words, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489–90, 114 S.Ct. 2364. Based on this analysis, the Court

concluded that the plaintiff in *Heck* could not pursue his section 1983 claim because the underlying conviction on which the claim was based was actively under appeal at the time the plaintiff filed suit.

In *Wallace,* the Supreme Court addressed "the *Heck* rule" in the context of a suit for false arrest. 549 U.S. at 393, 127 S.Ct. 1091. There, the plaintiff waited until the state had dropped the charges against him in the underlying criminal case before bringing his section 1983 claims for damages. In upholding the district court's finding that the suit was untimely, the Supreme Court held that the limitations period for an action for false arrest, like that of false imprisonment, begins to run when the alleged false imprisonment ends. In a false arrest case, that occurs when the detention without legal process becomes a detention pursuant to legal process (such as being bound over by a magistrate or arraigned on charges). *Id.* at 389, 127 S.Ct. 1091.

The plaintiff argued that the *Heck* rule operated to defer the accrual of his cause of action until after the state terminated the criminal proceedings against him. Because the tort of false arrest, unlike the tort of malicious prosecution at issue in *Heck,* does not include the element of "the setting aside *of an extant conviction,*" the Supreme Court rejected this argument. *Id.* at 393, 127 S.Ct. 1091 (emphasis in original). Addressing the problem of a plaintiff having to file a civil rights action before any indictment or criminal trial, the Supreme Court stated:

> [I]t is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise,

the civil action will proceed, absent some other bar to suit.

*Id.* at 393–94, 127 S.Ct. 1091 (internal citations omitted).

■ By the plain language of the Supreme Court's *Heck* decision, the limitations period for Plaintiff's section 1983 cause of action here began to run on September 1, 2009, the date on which Plaintiff's writ of habeas corpus issued and Judge Young released him on conditions. *See Heck,* 512 U.S. at 489–90, 114 S.Ct. 2364. September 1, 2009, is the date when Plaintiff knew or had reason to know of the injury that is the basis for the claims he now asserts before this court. *See Nieves,* 241 F.3d at 52 (stating that "a section 1983 claim accrues at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim"). To have been timely, Plaintiff would have had to have filed his claim by September 1, 2012.

■ Plaintiff offers two arguments that could colorably be construed as seeking equitable tolling. The first argument he presents is that the conditions of release imposed on him between September 2009 and January 2010 operated as a basis to stall the accrual of his claims. Though the conditions he agreed to for the period between his release from custody and the Supreme Court's denial of certiorari could reasonably be construed as causing additional injury to Plaintiff, this enhanced harm to him does not operate to toll the statute of limitations. The Supreme Court has made it clear that "[t]he cause of action accrues even though the full extent of the injury is not yet known or predictable." *Wallace,* 549 U.S. at 391, 127 S.Ct. 1091.

■ Plaintiff's second argument is that, given his case's up-and-down procedural history (e.g., the Massachusetts Appellate Court's reversal of his conviction and the SJC's reinstatement of it), a reasonably

prudent person in his shoes would not have known that his cause of action accrued on the date the writ of habeas corpus issued instead of the date that the Supreme Court denied certiorari, thus truly expunging Plaintiff's conviction. Unfortunately for Plaintiff, no authority supports this basis for equitable tolling. As *Wallace* makes clear, the proper course for Plaintiff would have been to file his section 1983 claims within three years of the issuance of the writ of habeas corpus when he knew that his conviction had been called into question. If necessary, the court could have stayed the action pending the Supreme Court's decision on the Commonwealth's petition for certiorari. *See id.* at 392, 127 S.Ct. 1091.

*Heck* establishes that Plaintiff's claim accrued when his conviction was "called into question" by the issuance of habeas relief. 512 U.S. at 487, 114 S.Ct. 2364. That date was, at the latest, September 1, 2009, when Judge Young, on instructions from the First Circuit, issued the writ of habeas corpus and released Plaintiff on conditions.[3] Starting at that point, Plaintiff had a full three years to file his lawsuit, up to September 1, 2012. By the time Plaintiff filed his complaint on January 18, 2013, his claims were untimely.

## IV. *CONCLUSION*

For the foregoing reasons, the court has ALLOWED Defendants' Motions to Dismiss. (Dkt. Nos. 74, 76, 78, 81, 83, 85, & 87.) The clerk will enter judgment for all remaining Defendants. This case may now be closed.

It is So Ordered.

---

**3.** A good argument could be made that the accrual date was even earlier, on June 10, 2009, when the First Circuit reversed the district court's denial of the petition for habeas corpus.